UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| FLAT RIVER FARMS, LLC, ET AL. | CIVIL ACTION NO. 19-1249 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| MRC ENERGY COMPANY | MAGISTRATE JUDGE MCCLUSKY |

**MEMORANDUM RULING**

Before the Court is Defendant MRC Energy Company's ("MRC") Partial Motion to Dismiss Claims on Prescription. See Record Document 75. MRC seeks partial dismissal on the ground that Plaintiffs Flat River Farms, LLC, Frank J. Raley, Teresa L. Raley, Northwest Louisiana Carters, LLC, and Gibbs Company, LLC's claims for underpayment of royalties before August 16, 2016, are prescribed pursuant to Louisiana Civil Code Article 3494(5). See id. Plaintiffs oppose the motion, arguing MRC relies on improper evidence and that Paragraph 11 of the Lease defeats the prescription argument. See Record Document 88. The defense replied, maintaining that all exhibits submitted are properly before the Court and Plaintiffs' claims based on underpayment of royalties before August 16, 2016 are prescribed. See Record Document 89. For the reasons set forth below, MRC's Partial Motion to Dismiss Claims on Prescription is **DENIED**.

**BACKGROUND**

This case arises out of an oil and gas royalty dispute between Plaintiffs and MRC. Plaintiffs assert claims under Louisiana Revised Statute 31:137 for alleged underpayment of royalties. On January 11, 2011, Flat River Farms, LLC ("Flat River Farms"), G. Keith Christy, M.D., Katherine J. Christy entered into an oil, gas and mineral lease ("the Lease") with Matador Resources Company, the predecessor in title to MRC. See Record

Document 1-1 at ¶ 2.  The Lease was attached to the Petition as Exhibit A.[1]  The Lease was recorded in the Conveyance Records of Bossier Parish, Louisiana, on January 11, 2011, under Registry No. 1011426.  See id.  The Raleys are successor members in Flat River Farms to the Christys beginning in December 2012.  See id. at ¶ 3.  Northwest Louisiana Carters, LLC and Gibbs Company, LLC are the assignees of Flat River Farms' interest in the Lease effective January 1, 2018.  See id.  Thus, Plaintiffs are now or have previously been owners of interests in the oil, gas and mineral rights affecting lands located in Section 11, Township 15 North, Range 11 West, Bossier Parish, Louisiana, which rights are subject to the Lease.  See id.

The Lease provides for a payment to the mineral lessor thereof a royalty of, "the market value at the well of one-fourth of the gas . . .," sold or used from the well.  Id. at ¶ 4; Record Document 75-2 at 1.  Paragraph 11 of the Lease provides:

> In case of suit, adverse claim, dispute or questions as to the ownership of the royalties (or some part thereof) payable under this lease, Lessee shall not be held in default in payment of such royalties (or the part thereof in dispute), until such suit, claim, dispute or question has been fully disposed of, and Lessee shall have thirty (30) days after being furnishes with a certified copy of the instrument or instruments disposing of such suit, claim or dispute, or after being furnished with proof sufficient, in Lessee's opinion, to settle such question, within which to make payment.  Should the right or interest of Lessee hereunder be disputed by Lessor, or any other person, the time covered by the pendency of such dispute shall not be counted against Lessee either as affecting the term of the lease or for any other purpose, and Lessee may suspend all payments without interest until there is a final adjudication or other determination of such dispute.

Id. at 2.  The Lease also included a typed Exhibit A containing specific additional terms.  Paragraph 5 of Exhibit A provides:

> Notwithstanding anything contained hereinabove to the contrary, all oil, gas or other proceeds accruing to the Lessor under this lease or by state law

---

[1] The Petition was filed in the 26th Judicial District Court, Bossier Parish, Louisiana, and removed to this Court on September 24, 2019.  See Record Document 1.

> shall be without deduction for the cost of producing, gathering, storing, separating, treating, dehydrating, compressing, processing, transporting, and marketing the oil, gas and other products produced hereunder to transform the product into marketable form; however, any such costs which result in enhancing the value of the marketable oil, gas or other products to receive a better price may be deducted from Lessor's share of production so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

Id. at 5.

The land covered by the Lease was unitized and force pooled with other lands located in Section 11, Township 15 North, Range 11 West, Bossier Parish, Louisiana, to create HA RA SUD, Swan Lake Field, pursuant to Office of Conservation Order No. 691-C-1. Chesapeake Operating, Inc. ("Chesapeake") was designated operator of the unit. On January 21, 2011, Chesapeake spud the HA RA SUD; Davis 11-15-11 H-1 Well on HA RA SUD and on November 6, 2015, Chesapeake spud the HA RA SUD; Davis 11-15-11 H-2 alt Well on HA RA SUD (jointly, "the Wells"). MRC participated in the drilling and completion of the Wells as a non-operating working interest owner. See Record Document 1-1 at ¶ 12.

On January 27, 2011, Petro-Chem Operating Company, Inc., the operator of the units created for the Cotton Valley Formation, invoked a concursus proceeding entitled Petro-Chem Operating Company, Inc. v. Flat River Farms, L.L.C., et al., Docket No. 135178, 26th Judicial District Court, Bossier Parish, Louisiana (the "Concursus Proceeding"). See id. at ¶ 7. During the pendency of the Concursus Proceeding, Chesapeake marketed all production from the Wells. Revenue was held in suspense from January 2011 through July 24, 2017. See id. at ¶ 8. Upon resolution of the Concursus Proceeding, MRC was paid, from suspense, its proportionate share of

revenue that had been received by Chesapeake, and MRC subsequently paid Plaintiffs their royalty fraction of such revenue. See id. at ¶ 9.

Following the release of the funds from suspense, Plaintiffs performed a production audit to analyze the amounts being tendered to it for the six and a half years of suspended royalty payments. See id. Plaintiffs allege that the production audit revealed that the amount paid in suspense for royalties fell significantly below the market value of the gas as of the time it was produced. See id. at ¶ 10. On December 13, 2013, John Gibbs, Manager for Flat River Farms sent a letter to MRC inquiring as to why Flat River Farms royalty interest has been put into "Legal Suspense" and requested a monthly accounting of the amount held in suspension. Record Document 75-3. This letter was not attached to the Petition, but was included as an exhibit with the instant motion. On January 15, 2014, MRC responded to the letter stating that Flat River Farms' royalty interest was being held in suspense, pursuant to Paragraph 11 of the Lease, pending a judicial determination of the Concursus Proceeding and provided a Revenue Detail Suspense Register as requested by Flat River Farms' Manager. Again, this letter was not attached to the Petition, but was included as an exhibit with the instant motion. See Record Document 75-4.

On July 13, 2015, prior counsel for Flat River Farms sent a Notice of Failure to Make Proper and Timely Payment of Royalty Pursuant to Louisiana Revised Statute 31:137. This notice was not attached to the Petition, but was included as an exhibit with the instant motion. See Record Document 75-5. At that time, Flat River Farms claimed that based upon their review of the documents provided and the facts known that Chesapeake has "underpaid royalties pursuant to the lease each and every month of

production from the date of inception of the lease through today." Id.  On August 14, 2015, MRC responded to the July 13, 2015, demand letter.  Again, this letter was not attached to the Petition, but was included as an exhibit with the instant motion.  See Record Document 75-6.  MRC again reminded Flat River Farms that pursuant to the Lease and the pending Concursus Proceeding, that any royalties owed to Flat River Farms are being held in suspense.  See id.  Specifically, the letter provided:

> Further pursuant to Section 11 of the MRC Lease, until such time that the court renders a final disposition in the Petro-Chem concursus suit, MRC cannot be held in default for payment of royalty.  Until that time your demand against MRC is premature.

Id. at 2.

On August 29, 2019, Plaintiffs filed suit alleging multiple claims against MRC, specifically for the underpayment of royalties.  See Record Document 1-1.  MRC contends that Plaintiffs attempt to allege the doctrine of *contra non valentem* to push the prescriptive period of their claims.  According to the defense, Plaintiffs seek to invoke the exceptional judicial doctrine because they were "unable to know or determine what price was being used to calculate its royalty until the release of funds from suspense, and the production of the royalty accounting," until after the July 2017 audit.  Id. at ¶ 18.  MRC filed the instant motion seeking partial dismissal because it submits Plaintiffs were on notice that their royalty interests were in legal suspense since 2011.  Plaintiffs had apparently analyzed the payments and determined what price was being used to calculate its royalty because they claimed, through counsel, that their royalty interests were being underpaid pursuant to their July 2015 demand letter.  Thus, at a minimum, the defense contends that Plaintiffs had actual knowledge of a potential cause of action for an alleged underpayment of royalties for the time period of January 2011 through July 2015.  MRC

filed the instant motion because Plaintiffs waited until August 29, 2019, over four years after their initial demand letter, to pursue their claims for alleged underpayment of royalties. As such, the defense maintains that many of their claims are prescribed as a matter of law.

## LAW AND ANALYSIS

### I.  Rule 12(b)(6) Standard.

The standard for the adequacy of complaints is now a "plausibility" standard found in Bell Atlantic Corp. v. Twombly and its progeny. 550 U.S. 544, 127 S. Ct. 1955 (2007). Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555–56, 127 S. Ct. at 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. In deciding a Rule 12(b)(6) motion to dismiss, a court generally may not "go outside the pleadings." Colle v. Brazos Cty., Tex., 981 F.2d 237, 243 (5th Cir. 1993). However, a court may rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice" in deciding a motion to dismiss. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008).[2] Additionally, courts must accept all

---

[2] The Court also notes that while its review of a Rule 12(b)(6) motion to dismiss is generally limited to the plaintiff's complaint, documents attached by a defendant are properly considered "if they are referred to in the plaintiff's complaint and are central to her claim," and "[i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of

factual allegations in the complaint as true. See Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. However, courts do not have to accept legal conclusions as facts. See id.

A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. See Thompson v. City of Waco, Tex., 764 F.3d 500, 503 (5th Cir. 2014). Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 678–79, 129 S. Ct. at 1949. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558, 127 S. Ct. at 1966.

Furthermore, a Rule 12(b)(6) motion to dismiss is the proper procedural device to raise a statute of limitations defense. See Bowers v. Nicholson, 271 F. App'x 446, 449 (5th Cir. 2008). A "motion to dismiss may be granted on the basis of prescription if the untimeliness appears from the face of the complaint." Potier v. JBS Liberty Sec., Inc., No. 13-0789, 2014 WL 5449726, at *3 (W.D. La. Oct. 24, 2014). If the plaintiff's claims are prescribed on the face of the pleadings, the plaintiff has the burden of proving the claims

---

whether a claim has been stated." Carter v. Target Corp., 541 F. App'x 413, 416–17 (5th Cir. 2013) (citations omitted); see also BP Am. Prod. Co. v. R.D. Briscoe, Inc., No. 08-CV-01895, 2010 WL 5125529, at *1 (W.D. La. Dec. 8, 2010).

Courts have also "held that when a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure." Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2nd Cir. 1991). When the plaintiff has actual notice of all the information in the movant's papers and has relied upon the documents in framing the case, the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated. See id. at 48.

are not prescribed. See, e.g., Sims v. Am. Ins. Co., 12-204 (La. 10/16/12), 101 So.3d 1, 4 (citation omitted).

## II. Prescription.

Louisiana Civil Code Article 3494(5) provides that an action to recover underpayments or overpayments of royalties from the production of minerals are subject to a liberative prescription of three years. See La. Civ. Code art. 3494(5). Article 3495 states that "this prescription commences to run from the day payment is exigible." La. Civ. Code art. 3495. Prescription "accrues as to past due payments even if there is a continuation of labor, supplies, or other services." Id. "Black's Law Dictionary defines an 'exigible' debt as a liquidated and demandable debt; a mature claim." Ledoux v. City of Baton Rouge/Par. of E. Baton Rouge, 1999-2061 (La. 2/29/00), 755 So.2d 877, 879.[3] Comment (b) to Article 3495 also offers further explanation:

> On principle, liberative prescription commences to run from the day a cause of action arises and its judicial enforcement is possible. See 2 M. Planiol, Traité élémentaire de droit civil 3 Pt. 2, at 358 (Louisiana State Law Institute trans.1959):
>
> > Liberative prescription begins to run as soon as the action accrues, or, as Pothier said "the day on which the creditor could institute his demand." It cannot commence sooner, because the time given for prescription should be a

---

[3] In Ledoux, the Louisiana Supreme Court analyzed Article 3495, reasoning:

> Applying article 3495 to the facts of this case, we conclude that Mr. Ledoux's claim for payment for compensatory time which accrued prior to 1985 had not prescribed when he filed this suit in 1995. Prescription on this claim did not commence to run until payment for his accrued compensatory time became exigible or when Mr. Ledoux could act on his claim for payment thereof. . . . Therefore, we find that when Mr. Ledoux's accrued compensatory time was reduced in 1985, he could neither be paid for the accrued compensatory time nor could he use the accrued time under the personnel rules of the city/parish in effect in 1985 until he was terminated or he retired. The prescriptive period could not commence sooner than the time of resignation or retirement because he could not institute his demand sooner under the personnel policy. Hence, his right to claim payment for compensatory time was not exigible until he retired in 1995. He filed this suit a few months later.

Ledoux, 755 So.2d at 880.

> time during which the action can be exercised, and one cannot reproach the creditor for not having acted at a time when he did not have the right to do so. Otherwise, it could happen that the right would be lost before it could be exercised, which would be as unjust as absurd (Cass.Civ., 11 Dec. 1918, D.1923.1.96, P. and S.1921.1.161).

Born v. City of Slidell, 2015-0136 (La. 10/14/15), 180 So.3d 1227, 1233. Notwithstanding, "a juridical act purporting to exclude prescription, to specify a longer period than that established by law, or to make the requirements of prescription more onerous, is null." La. Civ. Code art. 3471.

### III.     Analysis.

The Court first holds that it is within its discretion to consider not only the Lease, which was attached to the Petition, but also the four exhibits submitted by MRC in deciding the instant motion.  Plaintiffs had notice and possession of the letters and notices and it is clear such documents are central to their claims.  Moreover, there is no dispute amongst the parties that a three year liberative prescription period governs this matter. See La. Civ. Code art. 3494(5).    Untimeliness seems to appear from the face of the complaint since Plaintiffs did not file the instant suit until August 2019. See Potier, 2014 WL 5449726, at *3.  Yet, at this stage, Plaintiffs are free to prove their claims are not prescribed.  See Sims, 101 So.3d at 4 (reasoning if the plaintiff's claims are prescribed on the face of the pleadings, the plaintiff has the burden of proving the claims are not prescribed).

Prescription in this matter commenced to run from the day payment was exigible. See La. Civ. Code art. 3495.  While MRC believes Plaintiffs are invoking *contra non valentem* to extend the prescriptive period, this Court believes this case turns on exigibility without the need to apply the exceptional legal doctrine of *contra non valentem*.  The

critical issue to be determined is when payment became exigible in light of the Concursus Proceeding, which concluded in July 2017, and Paragraph 11 of the Lease. The Court finds guidance in not only legal definitions and holdings, but also the letters exchanged between the parties in 2013 through 2015. According to Black's Law Dictionary, an exigible debt is a "demandable debt" or "a *mature* claim." Ledoux, 755 So. 2d at 879 (emphasis added). The comments to Article 3495 further explain that liberative prescription begins to run on "the day on which the creditor could institute his demand." Born, 180 So. 3d at 1233. MRC contends that the royalty interests payments were paid in suspense monthly. Conversely, Plaintiffs submit that the royalty payments were not paid; instead, the revenue was held in suspense. Here, it seems incongruous to claim that payment was exigible prior to the conclusion of the Concursus Proceeding because under Paragraph 11 of the Lease, payment did not actually have to be made. MRC seems to admit this very position in its August 14, 2015 response to Plaintiffs, wherein it reminded Flat River Farms that any royalties owed to Flat River Farms were being held in suspense pursuant to the Lease and the pending Concursus Proceeding. See Record Document 75-6. MRC's letter specifically provided:

> Further pursuant to Section 11 of the MRC Lease, until such time that the court renders a final disposition in the Petro-Chem concursus suit, MRC cannot be held in default for payment of royalty. ***Until that time your demand against MRC is premature.***

Id. at 2 (emphasis added). This Court believes prescription began to run at the point when MRC was no longer within its rights to refuse to tender royalties under Paragraph 11 of the Lease. MRC did not have to tender payment until after resolution of the Concursus Proceeding (July 2017). Thus, while Plaintiffs may have had the knowledge

and information to take action, prescription did not begin to run until the payment became exigible.[4]

## CONCLUSION

Based on the foregoing analysis, the Court finds Plaintiffs' claims are not prescribed. MRC's Partial Motion to Dismiss Claims on Prescription (Record Document 75) is, therefore, **DENIED**. An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana on this 25th day of July, 2024.

_____
United States District Judge

---

[4] MRC relied on Monroe v. Physicians Behav. Hosp., LLC, 49,248 (La. App. 2 Cir. 8/13/14), 147 So.3d 787, to support its argument for prescription. "In cases dealing with salaries and wages [like Monroe], the demand for payment can be made as soon as the wages are earned and payable." Id. at 794. Here, the demand for payment could not be made until after conclusion of the Concursus Proceeding. Monroe is easily distinguishable from the instant matter.