**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

FLAT RIVER FARMS, LLC, ET AL.                    CIVIL ACTION NO. 19-1249

VERSUS                                            JUDGE S. MAURICE HICKS, JR.

MRC ENERGY COMPANY                                MAGISTRATE JUDGE MCCLUSKY

**MEMORANDUM RULING**

Before the Court is Defendant MRC Energy Company's ("MRC") Motion for
Summary Judgment.  See Record Document 78.  MRC seeks summary judgment on the
ground that Plaintiffs Flat River Farms, LLC, Frank J. Raley, Teresa L. Raley, Northwest
Louisiana Carters, LLC, and Gibbs Company, LLC's have not established an essential
element of their *prima facie* case, namely damages.  See id.  Plaintiffs oppose the motion,
arguing they have substantial evidentiary support for their claims.  See Record Document
92.  The defense replied, maintaining that Plaintiffs are replying on self-serving conclusory
allegations and speculative trial testimony.  See Record Document 95.  For the reasons
set forth below, MRC's Motion for Summary Judgment is **DENIED**.

**BACKGROUND**

This case arises out of an oil and gas royalty dispute between Plaintiffs and MRC.
Plaintiffs assert claims under Louisiana Revised Statute 31:137 for alleged underpayment
of royalties.  On January 11, 2011, Flat River Farms, LLC ("Flat River Farms"), G. Keith
Christy, M.D., Katherine J. Christy entered into an oil, gas and mineral lease ("the Lease")
with Matador Resources Company, the predecessor in title to MRC.  See Record
Document 1-1 at ¶ 2.  The Lease was recorded in the Conveyance Records of Bossier
Parish, Louisiana, on January 11, 2011, under Registry No. 1011426.  See id.  The Raleys

are successor members in Flat River Farms to the Christys beginning in December 2012.
See id. at ¶ 3.   Northwest Louisiana Carters, LLC and Gibbs Company, LLC are the
assignees of Flat River Farms' interest in the Lease effective January 1, 2018.  See id.
Thus, Plaintiffs are now or have previously been owners of interests in the oil, gas and
mineral rights affecting lands located in Section 11, Township 15 North, Range 11 West,
Bossier Parish, Louisiana, which rights are subject to the Lease.  See id.

The Lease is on a printed formed entitled LOUISIANA SPEC. 14-BRI-2A-NL-MRC
PAID UP R2/99.  See Record Document 78-3 at 1.  The Lease provides for a payment to
the mineral lessor thereof of a royalty of, "the market value at the well of one-fourth of the
gas . . .," sold or used from the well.  Id. at  ¶ 4.  Paragraph 11 of the Lease provides:

> In case of suit, adverse claim, dispute or questions as to the ownership of
> the royalties (or some part thereof) payable under this lease, Lessee shall
> not be held in default in payment of such royalties (or the part thereof in
> dispute), until such suit, claim, dispute or question has been fully disposed
> of, and Lessee shall have thirty (30) days after being furnishes with a
> certified copy of the instrument or instruments disposing of such suit, claim
> or dispute, or after being furnished with proof sufficient, in Lessee's opinion,
> to settle such question, within which to make payment.  Should the right or
> interest of Lessee hereunder be disputed by Lessor, or any other person,
> the time covered by the pendency of such dispute shall not be counted
> against Lessee either as affecting the term of the lease or for any other
> purpose, and Lessee may suspend all payments without interest until there
> is a final adjudication or other determination of such dispute.

Id. at 2.  The Lease also included a typed Exhibit A containing specific additional terms.

Id. at 5.  Paragraph 5 of Exhibit A provides:

> Notwithstanding anything contained hereinabove to the contrary, all oil, gas
> or other proceeds accruing to the Lessor under this lease or by state law
> shall be without deduction for the cost of producing, gathering, storing,
> separating, treating, dehydrating, compressing, processing, transporting,
> and marketing the oil, gas and other products produced hereunder to
> transform the product into marketable form; however, any such costs which
> result in enhancing the value of the marketable oil, gas or other products to
> receive a better price may be deducted from Lessor's share of production

so long as they are based on Lessee's actual cost of such enhancements. However, in no event shall Lessor receive a price that is less than, or more than, the price received by Lessee.

Id.

The land covered by the Lease was unitized and force pooled with other lands located in Section 11, Township 15 North, Range 11 West, Bossier Parish, Louisiana, to create HA RA SUD, Swan Lake Field, pursuant to Office of Conservation Order No. 691-C-1. Chesapeake Operating, Inc. ("Chesapeake") was designated operator of the unit. On January 21, 2011, Chesapeake spud the HA RA SUD; Davis 11-15-11 H-1 Well on HA RA SUD and on November 6, 2015, Chesapeake spud the HA RA SUD; Davis 11-15-11 H-2 alt Well on HA RA SUD (jointly, "the Wells").  MRC participated in the drilling and completion of the Wells as a non-operating working interest owner.  See Record Document 1-1 at ¶ 12.

On January 27, 2011, Petro-Chem Operating Company, Inc., the operator of the units created for the Cotton Valley Formation, invoked a concursus proceeding entitled Petro-Chem Operating Company, Inc. v. Flat River Farms, L.L.C., et al., Docket No. 135178, 26th Judicial District Court, Bossier Parish, Louisiana (the "Concursus Proceeding").  See id. at ¶ 7.  During the pendency of the Concursus Proceeding, Chesapeake marketed all production from the Wells.  Revenue was held in suspense from January 2011 through July 24, 2017.  See id. at ¶ 8.  Upon resolution of the Concursus Proceeding, MRC was paid, from suspense, its proportionate share of revenue that had been received by Chesapeake, and MRC subsequently paid Plaintiffs their royalty fraction of such revenue.  See id. at ¶ 9.  Shortly after conclusion of the Concursus Proceeding, MRC elected to market its share of production, including that

attributable to the Lease.  See Record Document 78-4 at ¶ 9.  Effective February 1, 2017, MRC entered into a Gathering and Natural Gas Services Agreement with Whiskey Bay Gathering Company, LLC ("Whiskey Bay").  See id.  Under that agreement, Whiskey Bay dehydrated, treated, gathered, and redelivered to the point of sale all gas allocable to the Lease, and Sequent Energy Management then purchased the gas at that point.

Following the release of the funds from suspense, Plaintiffs performed a production audit to analyze the amounts being tendered to it for the six and a half years of suspended royalty payments.  See Record Document 1-1 at ¶ 9.  Plaintiffs maintain that the production audit revealed that the amount paid in suspense for royalties fell significantly below the market value of the gas as of the time it was produced.  See id. at ¶ 10.  On August 29, 2019, Plaintiffs filed suit asserting multiple claims against MRC, specifically for the underpayment of royalties.  See Record Document 1-1.  Plaintiffs further contend that MRC failed "to secure a reasonable sales price for the gas attributable to acreage in the Unit covered by the Lease."  Id. at ¶ 17.

MRC filed the instant motion, arguing that Plaintiffs have provided no competent evidence of the market value of the gas or that MRC failed to secure a reasonable price for the gas.  See Record Document 78.  It contends that Plaintiffs cannot establish a critical element of their claims and as such their suit should be dismissed with prejudice.  See id.

## LAW AND ANALYSIS

### I.    Summary Judgment Standard.

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and

that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; see also

Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  In applying this standard, the court

should construe "all facts and inferences in favor of the nonmoving party." Deshotel v.

Wal-Mart Louisiana, L.L.C., 850 F.3d 742, 745 (5th Cir. 2017); see also Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor.").  As such, the party

moving for summary judgment bears the burden of demonstrating that there is no genuine

issue of material fact as to issues critical to trial that would result in the movant's

entitlement to judgment in its favor, including identifying the relevant portions of pleadings

and discovery.  See Tubacex, Inc. v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995). Courts

must deny the moving party's motion for summary judgment if the movant fails to meet

this burden.  See id.

If the movant satisfies its burden, however, the nonmoving party must "designate

specific facts showing that there is a genuine issue for trial." Id. (citing Celotex, 477 U.S.

at 323). In evaluating motions for summary judgment, courts must view all facts in the

light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 587 (1986). There is no genuine issue for trial – and thus a

grant of summary judgment is warranted – when the record as a whole "could not lead a

rational trier of fact to find for the non-moving party . . . ."  Id.

## II.     Louisiana Revised Statute 31:137, *et seq.*

"If a mineral lessor seeks relief for the failure of his lessee to make timely or proper

payment of royalties, he must give his lessee written notice of such failure as a

prerequisite to a judicial demand for damages or dissolution of the lease." La. Stat. Ann.

§ 31:137.  Section 139 states:

> If the lessee pays the royalties due in response to the required notice, the remedy of dissolution shall be unavailable unless it be found that the original failure to pay was fraudulent. The court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee, provided the original failure to pay royalties was either fraudulent or willful and without reasonable grounds. In all other cases, such as mere oversight or neglect, damages shall be limited to interest on the royalties computed from the date due, and a reasonable attorney's fee if such interest is not paid within thirty days of written demand therefor.

La. Stat. Ann. § 31:139.  "If the lessee fails to pay royalties due or fails to inform the lessor

of a reasonable cause for failure to pay in response to the required notice, the court may

award as damages double the amount of royalties due, interest on that sum from the date

due, and a reasonable attorney's fee regardless of the cause for the original failure to pay

royalties."  La. Stat. Ann. § 31:140.  In such instances, the court also has the discretion

to dissolve the lease.  See id.

In an action such as the instant matter for underpayment of royalties pursuant to a

lease agreement, the burden is on the plaintiff to prove market value at the well.  See

Ramming v. Nat. Gas Pipeline Co. of Am., 390 F.3d 366, 372 (5th Cir. 2004).  Market

value at the well can be proven in two ways: through the comparable sales method or

when comparable sales are not readily available, through the net-back method, that is,

by subtracting reasonable post-production costs from the market value at the point of

sale.  See id.  Lessors/royalty owners bear the burden of proving by a preponderance of

the evidence that the lessee failed to make proper royalty payments based on volume.

See Hutchings v. Chevron U.S.A., Inc., 862 S.W.2d 752, 761 (Tex. App. 1993), writ

denied (Mar. 30, 1994).

### III.   Analysis.

In the instant motion, MRC argues that Plaintiffs are unable to provide any evidence that their royalty interests were underpaid pursuant to the lease language. Because they are unable to establish any number of damages, MRC submits that Plaintiffs' claims must be dismissed as a matter of law.

The parties do not contest that Plaintiffs have the burden of proving "market value at the well."[1]   Much of MRC's motion focuses on the testimony of Joshua Rambo ("Rambo") and expert testimony of George E. McGovern ("McGovern").   See Record Document 78-1 at 9-13.   MRC maintains that neither Rambo nor McGovern's testimony establishes that Plaintiffs' royalty interest was underpaid.   Rambo's lay testimony has been excluded by this Court.   See Record Document 129.   While McGovern's expert testimony that the price paid by MRC was below market value is the subject of pending motion practice (Record Documents 77 and 101), such issues do not have to be resolved in order to decide the instant motion.

In response to MRC's motion, Plaintiffs begin by noting that they subpoenaed from Chesapeake – the operator of the Wells – all revenue, production, and accounting data from the Wells.   See Record Document 92 at 2.   Chesapeake produced several documents and spreadsheets in their native electronic format, with a sworn verification thereof.   See id.   The documents and spreadsheets included Revenue Payment Detail Spreadsheets, excerpts of which were submitted by Plaintiffs in order to oppose the instant motion.   See id. at 2-3; Record Document 92-2.   Steve Armstrong, a Revenue

---

[1] The parties also do not contest that Louisiana state law governs how the Lease should be interpreted. The Court hereby incorporates by reference the law regarding mineral leases previously set forth in Record Document 53 at 5-7.

Audit Supervisor with Chesapeake, will testify at trial on behalf of Chesapeake regarding these spreadsheets.  See Record Document 92 at 4; Record Document 92-3; Record Document 130.  Plaintiffs argue that these documents – and the testimony surrounding the documents – lend support to their argument that there is a genuine issue of fact as to whether the price received by MRC was a true price, or a net-back price that included all post-production costs.  Plaintiffs explain in their opposition:

> This is further evidence of damages in that the price at which Chesapeake calculated the Plaintiff's royalty was shown as significantly greater than the price at which Chesapeake paid MRC. For example, for production reported in February of 2014, Chesapeake credited MRC with its interest at a price of $3.682 and $3.876, yet the Plaintiff's royalty interest for that month was based on the price of $5.317.  [Record Document 92-2] at 3, 12. The difference between the two prices is the result of post production costs having been netted out.
>
> . . .
>
> This distinction is repeated hundreds of times. These spreadsheets contain thousands of rows of data and set out the gross price, the net price, and the expenses, for every month of production, from every well. While they may not be conducive for full analysis on a motion for summary judgment, to say that there is no evidence of damages is simply wrong.
>
> Steve Armstrong is a Revenue Audit Supervisor with Chesapeake and will testify at trial on behalf of Chesapeake regarding these spreadsheets—providing further evidence of the damages. See [Record Document 92-3].  . . .
>
> Not only does the evidence counter MRC's purported undisputed facts, it raises further issues as to whether MRC paid Plaintiffs on a price that was not only net of post production expenses, but whether it was also net of the royalty that had been retained by Chesapeake. The evidence amassed by Plaintiffs does explain why there were no deductions on MRC's payment advices from Chesapeake, and why the price was so low.

Record Document 92 at 3-4.

Here, MRC argued there was no genuine issue of material fact to defeat summary judgment because Plaintiffs failed to provide any evidence that their royalty interests were

underpaid.  In response to MRC's motion, Plaintiffs came forward with the Revenue Payment Detail Spreadsheets and the affidavit of Steve Armstrong.  At the summary judgment stage, this Court cannot independently draw any conclusions as to the exact meaning, significance, or importance of the Revenue Payment Detail Spreadsheets.  The spreadsheets will be the subject of Steve Armstrong's testimony, the credibility of which is an issue for the trier of fact, not this Court at the summary judgment stage.  This Court believes issues of material fact remain regarding whether Plaintiffs' royalty interests were underpaid, thereby preventing summary judgment.

**CONCLUSION**

Based on the foregoing analysis, MRC's Motion for Summary Judgment (Record Document 78) is **DENIED** as the Court believes issues of material fact remain regarding whether Plaintiffs' royalty interests were underpaid.  An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana on this 29th day of July, 2024.

_____
United States District Judge