**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

FLAT RIVER FARMS, LLC, ET AL.                    CIVIL ACTION NO. 19-1249

VERSUS                                           JUDGE S. MAURICE HICKS, JR.

MRC ENERGY COMPANY                               MAGISTRATE JUDGE MCCLUSKY

**MEMORANDUM ORDER**

Before the Court are two motions relating to George E. McGovern III, CPA ("McGovern") filed by Defendant MRC Energy Company ("MRC").   See Record Documents 77 & 101.   McGovern is Plaintiffs' expert witness.   The first motion is a Daubert Motion to Exclude the Testimony of McGovern. See Record Document 77.  More specifically, MRC seeks to exclude or limit at trial any opinion testimony from McGovern on the element of damages.  See id.  MRC contends that McGovern's expert  testimony is not based on sufficient facts or data, his testimony is not the product of reliable principles or methods, and he has not reliably applied the principles and methods to the facts of this case.  See id.  MRC submits that his testimony would only serve to confuse the trier of fact.  See id.  The second motion is a Motion in Limine to Exclude McGovern's Expert Testimony and Report on the grounds that McGovern is unqualified to provide an expert opinion in this case and his testimony is not the product of reliable principles and methods.  See Record Document 101.  Plaintiffs Flat River Farms, LLC, Frank J. Raley, Teresa L. Raley, Northwest Louisiana Carters, LLC, and Gibbs Company, LLC oppose both motions.  See Record Document 93.  MRC filed a reply as to its Daubert Motion. See Record Document 94.  For the reasons set forth below, MRC's motions (Record Documents 77 & 101) are **GRANTED IN PART AND DENIED IN PART**.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)   the testimony is based on sufficient facts or data;
>
> (c)   the testimony is the product of reliable principles and methods; and
>
> (d)   the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Pertinent evidence based on scientifically valid principles will satisfy those demands." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597, 113 S. Ct. 2786, 2799 (1993). The Daubert holding provided an illustrative list of factors that courts may use when evaluating the reliability of expert testimony. See id. at 592–594. These factors include whether the expert's theory or technique can be or has been tested, whether it has been subjected to peer review, whether it has a known or potential rate of error or standards controlling its operation, and whether it is generally accepted in the relevant scientific community. See id. at 593–594. "In short, expert testimony is admissible only if it is both relevant and reliable." Pipitone v. Biomatrix, Inc., 288 F.3d 239, 244 (5th Cir. 2002). Thus, the Daubert factors should be applied with flexibility and the question of whether an expert's testimony is reliable is ultimately a fact-specific inquiry. See Kumho

Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 138, 119 S. Ct. 1167, 1170 (1999); Burleson v. Tex. Dep't of Criminal Justice, 393 F.3d 577, 584 (5th Cir. 2004).

Though the trial court must fulfill its role as gatekeeper in ensuring that all admitted expert testimony is both reliable and relevant, "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." U.S. v. 14.38 Acres of Land, 80 F.3d 1074, 1078 (5th Cir. 1996). Thus, "[t]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, advisory committee's note (2000). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. The proponent of an expert's testimony bears the burden of proving that it meets the requirements of Rule 702. See Moore v. Ashland Chem., Inc., 151 F. 3d 269, 276 (5th Cir. 1998). Whether these elements are met is a preliminary question for the district court to decide under Federal Rule of Evidence 104(a).

This case arises out of an oil and gas royalty dispute between Plaintiffs and MRC. Plaintiffs produced a one-page expert report prepared by McGovern, a certified public accountant ("CPA"). Based on his expert report, McGovern was tasked with determining if Plaintiffs' royalties as determined by the Lease were underpaid. The report contains the following conclusions:

> • MRC was paid for its share of the proceeds of production from the wells covered by the Lease at a price that was consistently lower than the prevailing and industry standard price for the respective time period.
>
> • MRC was paid a depressed price for its share of the proceeds of production, but was not charged for any expenses associated with marketing, or preparing the produced gas for production.

• The payment of proceeds of production from an operator to a working interest owner at a price below market value, without any deductions for cost for marketing, transporting or any other affiliated cost, reflects a non-GAAP operating method of accounting and payment.  This is often referred to as a netback summary.

• It is my opinion that the operator of the wells at issue transferred ownership of the proceeds of production to a third-party marketer at a cost below market value.  It is my opinion that the third-party marketer then prepared the product for sale.

• It is my opinion that the per unit monetary value of the gas received by MRC, and upon which it paid royalties to the lessors of the Lease, does not reflect the true price, but reflects a discounted price to account for the deduction of expenses and other lease burdens.

Record Document 77-2.  During his deposition, McGovern was unable to explain his opinions in conjunction with actual evidence or analysis.  See Record Document 77-5 at 43-55.  He could not recall the prevailing industry rate for the respective time period and did not recollect the documents or information he had or that he used to establish the prevailing industry rate.  See id.  He also could not explain the basis of his conclusion that MRC was paid at a price that was consistently lower than the prevailing and industry standard price for the respective time period" stating:

A      What I should have done, did do, is I should have determined that price, not from an index, for the market and compared it to whatever the payment was for me to come to that conclusion.

Q      But you didn't do that?

A      I think I did.

Q      Okay.

A      I don't have anything to show you I did that or to compare it to.

Id. at 46-47.  McGovern admitted that he had not prepared or review for the deposition.

See id. at 46.  Based on the contents of the report and McGovern's deposition testimony,

MRC contends that McGovern is unqualified to provide an expert opinion in this case and that his report is not based on any reliable facts or data.  MRC submits that McGovern is unqualified to provide opinion regarding the various methods of allocating and recouping expenses, and the various methods in which non-operating working interest owners are accessed costs, directly or indirectly, in the oil and gas production process.  MRC maintains that McGovern's trial testimony will not be the product of reliable principles and methods, and that he has not reliably applied the principles and methods to the facts of this case.

McGovern's testimony will of course be limited to his written report.  The Court agrees that portions of McGovern's opinions are not sufficiently grounded in any actual evidence or analysis, thereby rendering them void of the necessary indicia of reliability. Without more reliable methodology and factual support for his analysis, McGovern's opinion that the per unit monetary value of the gas received by MRC, and upon which it paid royalties to Plaintiffs, does not reflect the true price, but rather a discounted price to account for the deduction of expenses and other lease burdens is inadmissible and would not be helpful to the jury.  Rule 702 requires this Court to exercise its role as a gatekeeper and exclude such unreliable expert opinion.  McGovern can provide no testimony regarding money, numbers or claimed damages as it relates to the instant matter. Notwithstanding, he is qualified as a CPA to opine on generally accepted accounting principles ("GAAP") applicable to oil and gas royalty payments.  Additionally, assuming the proper foundation is laid, McGovern may be able to opine generally on allocation of

production and recouping expenses.[1]  It appears – based on Plaintiffs' concessions[2] –

that McGovern will be more of a "set up" expert for Plaintiffs' Chesapeake witness, who

seemingly will be their numbers' witness.[3]  Thus,  MRC's motions (Record Documents 77

& 101) are **GRANTED IN PART AND DENIED IN PART** as outlined above.

IT IS SO ORDERED.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana on this 30th day of July,

2024.

_____
United States District Judge

---

[1] Based on his experience as an accountant in the oil and gas area, McGovern can opine generally on typical oil and gas practices regarding allocation and what kind of costs are assessed to non-operating working interest owners, etc.

[2] In their response, Plaintiffs explain:

> McGovern is a certified public accountant. He is not an expert in the valuation of petroleum production.  He is not an expert on price comparison. He is an expert on accounting with respect to oil and gas for his more than 2500 clients.
> Mr. McGovern was not presented as an expert to provide a valuation as to the appropriate price that should have been paid to the Plaintiffs. That is unnecessary as Chesapeake Operating Company . . . provided that documentation. Mr. McGovern was not retained as an expert to testify as to why MRC paid the Plaintiffs based on a price that was after all post production costs had been netted out.
> Mr. McGovern was retained to provide his expert opinion to the Court that the payment of proceeds of production to a non-operating working interest owner, without any deduction for post-production expenses, indicates a netback method, which is where the price is determined after the product has been sold downstream, and post-production costs have been subtracted therefrom.
> This opinion is based on Mr. McGovern's extensive experience of more than 50 years reviewing payment advices involving distribution of proceeds of production from mineral interests. It is an opinion he is more than qualified to make.  His inability to offer testimony regarding the price the Plaintiffs should have been paid was understandable as it was not within his area of expertise, and was actively concealed by MRC.

Record Document 93 at 1-2.

[3] MRC further alleged that McGovern's report did not comply with Rule 26(a)(2)(B)(i) and asked that the report be stricken.  Such request is denied, as the Court believes the report is in compliance with Rule 26.